IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) | |
| v. | ) | Nos. 2:03-cr-00063, 2:03-cr-00216 |
| | ) | Nos. 2:14-cv-00793, 2:14-cv-00794 |
| JEFFREY A. IMM | ) | |

**MEMORANDUM OPINION**

Pending before the Court is the MOTION TO CORRECT SENTENCE UNDER 28 U.S.C. § 2255 (ECF No. 43) filed by Jeffrey A. Imm ("Imm").[1] Imm also filed a SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO CORRECT SENTENCE UNDER 28 U.S.C. § 2255 (ECF No. 47). The government filed a response in opposition (ECF No. 55), and Imm filed a reply brief (ECF No. 57). Accordingly, the motion is ripe for disposition.

**I.     Background**

On February 7, 2003, Imm appeared before United States District Judge Arthur J. Schwab,[2] waived his right to an indictment, and pled guilty to a one-count information, filed at 2:03-00063, that charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), on or about October 31, 2001. Following his waiver and plea hearing, Imm was released on a $5,000 unsecured bond. At the time, however, the Allegheny County Court of Common Pleas had a detainer lodged against him related to his arrest on another offense, so he was not actually released from custody until February 10, 2003, when the detainer was lifted. Less than two weeks later, Imm was arrested for his involvement in a home burglary, during

---

1.     All references are to the documents filed at 2:03-cr-00063, unless otherwise noted.

2.     Judge Schwab recused himself from this case on June 23, 2014, and requested that the case be reassigned to another member of this Court. CM/ECF Text Order of Court of June 23, 2014. The next day, the case was re-assigned to the undersigned.

which two firearms and a number of other items were stolen. Sometime thereafter, the government decided to bring an additional charge against Imm based on this incident, and on August 27, 2003, an information was filed at 2:03-cr-00216, which charged Imm with being a felon in possession in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) on or about February 17, 2003. After the government decided to prosecute the second offense, but before the information was actually filed, Imm entered into a new plea agreement with the government, pursuant to which he would re-affirm his original guilty plea at 2:03-cr-0065, waive his right to an indictment to the second charge, and also plead guilty to that charge.

On August 20, 2003, the probation office issued a revised PSI report, which addressed both the October 2001 and February 2003 offenses.[3] According to the revised PSI, Imm's base offense level was 24, in accordance with U.S.S.G. § 2K2.1(a)(2). PSI ¶ 22. Imm's base offense level was then increased by two levels because the offenses involved three or more firearms. PSI ¶ 23. Because the probation office found that Imm had at least three prior convictions for "violent felon[ies]" committed on different occasions, however, the probation office determined that he was an armed career criminal under 18 U.S.C. § 924(e)(1), which increased his offense level from 26 to 33. PSI ¶ 31. In arriving at that determination, the probation office relied on the following convictions: (1) a 1998 conviction for aggravated assault; (2) a 1998 conviction for terroristic threats; and (3) a 1999 conviction for burglary, each of which was under Pennsylvania law. PSI ¶ 31. Imm's offense level was then decreased by three levels based on his acceptance of responsibility, resulting in an adjusted offense level of 30. PSI ¶¶ 32-33. Elsewhere in the PSI, the probation office described a long list of prior convictions, including, as relevant here, a 2003

---

3. The probation office first issued its PSI on March 13, 2003 – before the second charge was actually filed. The revised version was also filed before the second information was filed, but after the government had already decided to bring the second charge.

conviction for burglary described in ¶ 50, which totaled 26 criminal history points and placed Imm in criminal history category VI. An offense level of 30 and a criminal history category of VI resulted in a Guidelines' range of 168 to 210 months, but because of the ACCA's 15-year mandatory minimum, the floor of the Guidelines' range was increased to 180 months. PSI ¶ 87.

On August 27, 2003, Imm waived his right to an indictment and pled guilty to the charge at 2:03-cr-00216. Hr'g Tr. at 18-19, 30; ECF No. 40. At the same hearing, Judge Schwab adopted the relevant findings in the PSI, including its findings with respect to the applicability of the ACCA, and sentenced Imm to the mandatory minimum of 15 years on both charges, to be served concurrently, followed by five years of supervised release. Hr'g Tr. at 39-40; ECF No. 40. Imm did not file a direct appeal of his sentence.

On June 19, 2014, the Federal Public Defender's Office, on behalf of Imm, filed the instant motion, arguing that his prior convictions for burglary and terroristic threats under Pennsylvania law no longer qualify as "violent felon[ies]" under *Descamps v. United States*, 133 S. Ct. 2276 (2013). Thus, he argued, he is entitled to be re-sentenced because his "ACCA sentence is in excess of the statutory maximum, violates due process, and results in a fundamental miscarriage of justice." Suppl. Br. at 19, ECF No. 23. On July 9, 2014, this Court stayed the case pending a decision from the United States Court of Appeals for the Third Circuit in *United States v. Brown*, , 765 F.3d 185 (3d Cir. 2014), in which the Court of Appeals was to decide whether, following *Descamps*, a conviction under Pennsylvania's terroristic threats statute still constitutes a "crime of violence" for the purposes of the Guidelines' career offender enhancement in U.S.S.G. § 4B1.1.[4] The Court of Appeals issued a decision in *Brown* on

---

4. *Brown* involved the career offender enhancement and not the ACCA, but courts apply the same analysis under both provisions because of their similarity. *United States v. Marrero*, 743 F.3d 389, 394 n.2 (3d Cir. 2014).

September 2, 2014, holding that terroristic threats is no longer a "crime of violence" under *Descamps*. The next day, the Court lifted the stay.

## II. Discussion

### A. Timeliness

As an initial matter, the Court must consider whether Imm's motion is timely. Motions for relief under 28 U.S.C. § 2255 are governed by a one-year statute of limitations. 28 U.S.C. § 2255(f). The limitation period begins to run from the latest of –

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

Imm's conviction became final more than 10 years ago – far outside the ordinary limitations period established by § 2255(f)(1). Imm argues, however, that his motion is timely under § 2255(f)(3) because it was filed within one year of the Supreme Court's decision in *Descamps*, which he claims recognized a new right that is to be applied retroactively to cases on collateral review. As the Court has previously recognized, "the overwhelming weight of authority interpreting [*Descamps*] has actually held that there is no indication that the Supreme Court intended for its holding to be applied retroactively." *United States v. Wilson*, No. 06-

00097, 2014 WL 3339632, at *2 (W.D. Pa. July 8, 2014) (citing *United States v. Patrick*, 2014 WL 2991857, at *2 (E.D. Ky. July 2, 2014) (collecting cases); *Groves v. United States*, 755 F.3d 588, 593 (7th Cir. 2014) ("To date, the Supreme Court has not made *Descamps* retroactive on collateral review.")). Be that as it may, the government has informed the Court that it is affirmatively waiving any argument that *Descamps* is not retroactive and, in turn, its statute of limitations defense. The Court must honor that waiver. *See Wood v. Milward*, 132 S. Ct. 1833, 1834 (2012) (citations omitted) (explaining that it would be an abuse of discretion to ignore the deliberate waiver of a limitations defense). Accordingly, the Court will assume that *Descamps* recognized a new right that applies retroactively and that it restarted the limitations period, such that Imm's motion is timely under 28 U.S.C. § 2255(f)(3).

### B. Merits

The Court now turns to the merits of Imm's motion. Generally, a conviction for being a felon in possession of a firearm carries a statutory maximum term of incarceration of 10 years. 18 U.S.C. § 924(a)(2). But if a defendant "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another[,]" the defendant faces a 15-year mandatory minimum sentence. *Id.* § 924(e)(1). The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" which either:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

*Id.* § 924(e)(2)(i)-(ii). A crime may satisfy this definition in three ways: (1) it can come in under "the 'use of physical force' clause," (2) it can be "one of the statute's enumerated offenses –

5

burglary, arson, extortion, or a crime involving the use of explosives," or (3) it can come "under the residual clause because it poses a serious risk of physical injury to another." *United States v. Mitchell*, 743 F.3d 1054, 1063 (6th Cir. 2014).

Imm contends that, in view of *Descamps* and *Brown*, his conviction for terroristic threats no longer meets the "use of physical force" clause. He also argues that his Pennsylvania burglary is not a "violent felony" under *Descamps*. Thus, he argues, he does not have the three prior felony convictions necessary to trigger the ACCA, and his 15-year sentence is *per se* illegal, violates due process, and constitutes a miscarriage of justice, since it exceeds the otherwise applicable statutory *maximum* sentence of 10 years. The government, of course, disagrees. Relying on Imm's two burglary convictions and his unchallenged aggravated assault conviction, the government argues that Imm still has the requisite number of ACCA predicates, irrespective of *Descamps*' rationale. Govt.'s Resp. in Opp. at 12 n.7; ECF No. 47. Furthermore, although the government contends that Imm's two burglary convictions and one aggravated assault conviction are themselves sufficient to trigger the ACCA, it also argues that Imm's terroristic threats conviction, though no longer qualifying under the "use of physical force" clause, satisfies the residual clause.

This Court concludes that Pennsylvania burglary is a "violent felony" under the ACCA. While the sentencing judge relied on Imm's terroristic threats conviction as an ACCA predicate – a finding that is certainly called into doubt in light of *Brown*[5] – the Court need not decide whether that conviction may still be counted. That is because, as the government argues, Imm's

---

5. In *Brown*, however, the Court of Appeals did not address whether a conviction for terroristic threats could satisfy the residual clause, as the government did not make that argument. *Brown*, 765 F.3d at 188 n.1. Instead, it only addressed whether U.S.S.G. § 4B1.1's "use of physical force" clause could be met. *Id.* at 188. That leaves open the possibility that terroristic threats can still come in under the residual clause.

two prior burglary convictions, together with the unchallenged aggravated assault conviction, renders him eligible for the ACCA's enhanced mandatory minimum sentence.

### 1. Generic Burglary

The government first argues that Pennsylvania's burglary statute is divisible, and thus it invites the Court to apply the modified categorical approach in determining whether Imm's prior burglary convictions match the enumerated offense of burglary. Govt.'s Resp. at 10; ECF No. 30. At the time of Imm's two convictions, Pennsylvania law defined burglary as follows:

> A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

18 Pa. Cons. Stat. § 3502(a).[6] An "[o]ccupied structure" is defined as "[a]ny structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present." *Id.* § 3501.

As the government argues, though, § 3502(a) is divisible and, as a result, that the modified categorical approach may be applied to determine whether Imm was necessarily convicted of generic burglary. *See United States v. Hockenberry*, 730 F.3d 645, 669 (6th Cir. 2013) (holding "that the Pennsylvania [burglary] statute is divisible, as the *Descamps* Court uses that term"). The record in this case, however, is not sufficient for the Court to undertake the type of limited inquiry permitted by the modified categorical approach. Although the government has attached the charging instrument for Imm's 1999 burglary conviction, it has not attached any records related to Imm's second burglary conviction. Govt.'s Ex. B; ECF No. 55-2. Therefore, even applying the modified categorical approach, the Court would is not able to determine whether that conviction was necessarily for generic burglary.

---

6. Pennsylvania's burglary statute was amended effective September 4, 2012.

## 2. Residual Clause

Nevertheless, as the Supreme Court has made clear, "[t]he Government remains free to argue that any offense – including offenses similar to generic burglary – should count towards enhancement as one that 'otherwise involves conduct that presents a serious potential risk of physical injury to another' under § 924(e)(2)(B)(ii)." *Taylor v. United States*, 495 U.S. 575, 600 n.9 (1990). An offense satisfies the residual clause if it "'present[s] a serious potential risk of physical injury'" and is "roughly similar, in kind as well as degree of risk posed, to the examples [of burglary, arson, extortion, or use of explosives] themselves." *Marrero*, 743 F.3d at 394-95 (citations and quotation marks omitted; brackets in original). "'[A] crime is similar in kind to one of the enumerated examples if it "typically involve[s] purposeful, violent, and aggressive conduct."'"[7] *Id.* at 395 (quoting *United States v. Johnson*, 587 F.3d 203 (3d Cir. 2009) (quoting

---

7. It is not exactly clear that *Begay* "altered the analytical framework for residual clause cases," as the Court of Appeals suggested in *Marrero*, 743 F.3d at 394. In *Begay*, the Supreme Court held that driving under the influence ("DUI") is not a "violent felony" in part because DUI, unlike the enumerated offenses, does not involve "purposeful, violent, and aggressive conduct." *Begay*, 553 U.S. at 145. Just a few years later in *Sykes v. United States*, 131 S. Ct. 2267, 2275-76 (2011), however, the Supreme Court suggested that *Begay* did not actually announce a new standard applicable in all residual clause cases. As the *Sykes* Court explained, "[i]n many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk, for crimes that fall within the former formulation and those that present serious potential risks of physical injury to others tend to be one and the same." *Id.* at 2275. The *Sykes* Court proceeded to seemingly limit *Begay*'s application to cases involving strict liability crimes. *Id.* at 2276. Our Court of Appeals has twice recognized that *Sykes* may have affected the continuing viability of *Begay*'s analysis, albeit in not-precedential opinions. *See United States v. Hollins*, 514 F. App'x 264, 269 (3d Cir. 2013) (explaining that *Sykes* "relegated the 'purposeful, violent, and aggressive'" to cases involving strict liability crimes like DUI); *United States v. Green*, 543 F. App'x 266, 272 n.11 (3d Cir. 2013) (noting that "*Sykes* cast doubt on *Begay*'s 'purposeful, violent, and aggressive' standard, instructing instead to examine levels of risk"). Nevertheless, as recently as *Marrero* – the Court of Appeals' most recent published residual clause decision – it has continued to employ the "purposeful, violent, and aggressive" analysis. In this case, the distinction is not relevant because Imm's Pennsylvania burglary convictions

*Begay v. United States*, 553 U.S. 137, 144-45 (2008))). To determine whether a prior conviction constitutes a "violent felony" under the residual clause, the Court must apply the categorical approach. *Id.* (citing *Taylor*, 495 U.S. at 602). Under the categorical approach, the Court may consider only "'the fact of conviction and the statutory definition of the prior offense,'" and not the "particular facts disclosed by the record of conviction." *Shepard v. United States*, 544 U.S. 13, 17 (2005) (quoting *Taylor*, 495 U.S. at 602). Stated differently, the Court must focus on "whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." *James v. United States*, 550 U.S. 192, 202 (2007) (emphasis in original). Importantly, even under the categorical approach, not "every conceivable offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." *Id.* at 208 (citing *Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 193 (2007)). "Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *Id.*

The parties agree that Pennsylvania's burglary statute sweeps more broadly than generic burglary because it encompasses vehicles and other "structure[s]" outside the generic definition. *See Taylor*, 495 U.S. at 598 (defining generic burglary as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime"); *id.* at 599 (explaining that a statute that prohibited breaking and entering "any booth or tent, or any boat or vessel, or railroad car" is broader than generic burglary). The relevant inquiry, then, is whether the degree of risk posed by burglary of a "building or occupied structure," as Pennsylvania law defines those terms, is comparable to that posed by committing generic burglary. *James*, 550 U.S

---

come within the residual clause under either analysis.

at 203 (citing *Taylor*, 495 U.S. at 600 n.9) ("ask[ing] whether the risk posed by attempted burglary is comparable to that posed by its closest analog among the enumerated offenses – here, completed burglary").

The United States Supreme Court has observed that "[t]he main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party – whether an occupant, a police officer, or a bystander – who comes to investigate." *Id.* at 203. "That is, the risk arises . . . from the possibility that an innocent person might appear while the crime is in progress." *Id.*

By "require[ing] that the burglar enter an 'occupied structure,'" § 3502(a) is designed to reflect a similar "concern for human safety." *Commonwealth v. Hagan*, 654 A.2d 541, 544 (Pa. 1995). As the Pennsylvania Supreme Court has explained, the burglary statute was actually expanded to include "entries into buildings, occupied structures, separately secured parts of buildings or structures and separately occupied parts of buildings and structures" – in other words, "places where people are likely to be present" – because just like entries into traditional buildings, "such entries pose a threat of violence to persons." *Commonwealth v. Rolan*, 549 A.2d 553, 559 (Pa. 1988) (holding that burglary is a crime involving the use or threat of violence for purposes of Pennsylvania's aggravated circumstances statute). In fact, "[t]his threat of violence is so great that the Legislature has graded the offense as a felony of the first degree . . . ." *Id.* (citation omitted). By contrast, if the building or structure is shown to be abandoned, a defendant may be able to avoid conviction. *Id.* "This necessarily follows . . . because where a building or structure can be shown to be abandoned, there can be no threat of encountering another person and putting him in fear of violence." *Id.*

Imm argues, however, that it is "significantly" less likely that an intruder will encounter an innocent bystander whenever he is unlawfully entering "a motor vehicle or a yard where, for example, landscaping materials are stored" than when a traditional building is involved. Reply Br. at 16; ECF No. 57. He has not provided the Court with any basis for reaching that conclusion, and, in fact, it is not self-evident. As the Supreme Court of Pennsylvania recognized in *Hagan*, where it held that the phrase "occupied structure" encompassed a fenced and secured storage lot:

> It is . . . a common sense conclusion that employees will be present at [a fenced-in storage lot] in varying degrees to maintain, secure, and utilize the storage facility. Thus, it is often possible that a burglar will encounter an employee, such as a guard securing the facility or an employee making a routine delivery, in the course of committing his crime. As Blackstone noted, this encounter will often turn violent when the burglar encounters human opposition. In the instant case, the facility manager testified that he and his employees entered the yard regularly. Notes of Testimony 1/10/92 at 15, 21–22. Thus, the defendant and his accomplice could just have easily broken into this facility while a Morris employee was present at the site creating the possibility of a violent confrontation.

*Hagan*, 654 A.2d at 544. The same could be said about unlawful entry into a "motor vehicle" adapted for overnight accommodation or for carrying on business. *See United States v. Cantrell*, 530 F.3d 684, 696 (8th Cir. 2010) (concluding that "regardless of whether the 'inhabitable structure' Cantrell unlawfully entered was a house, car, boat, airplane, or other 'inhabitable structure' there existed the risk of a violent confrontation between Cantrell and the occupant, the police, or another third party"). Whenever a building or structure is put to such use, people are likely to be present – be they persons living, visiting, or working inside or simply passing by. Furthermore, even if it could be said that the potential risk of a violent encounter is *less* likely when a traditional building is not involved, that is not dispositive, as the risks posed by Pennsylvania burglary and generic burglary need not be exactly the same – only comparable. *See Marrero*, 743 F.3d at 394-95.

11

To be sure, Pennsylvania law once criminalized conduct under its burglary statute that posed no (or only very limited) potential risk of injury to anyone. *See, e.g.*, *Commonwealth v. McCoy*, 228 A.2d 43, 45-46 (Pa. Super. Ct. 1967) (holding that a phone booth was a "building" for the purposes of a prior version of the burglary statute). But that is no longer the case. When *McCoy* was decided, a defendant could be convicted of burglary even if the building was open to the public or he entered with permission of the owner or rightful occupant. *Id.* at 401. The burglary statute has since been amended, however, and under the more recent version of the statute, "one who enters premises open to the public or which he is permitted to enter is not a burglar, as he was under the prior law." *Commonwealth v. Cost*, 362 A.2d 1027, 1032 n.7 (Pa. Super. 1976) (internal citation and quotation marks omitted). "This change[d] the previous line of cases which had gone so far as to hold that the man who broke into a pay telephone booth was guilty of burglary[.]" *Id.* The Court, therefore, does not view *McCoy* as relevant to the foregoing analysis. Since it was decided, Pennsylvania's "law of burglary" has become "closer to its common law ancestor which sought to protect private premises from crime." *Id.*

Imm places most of his reliance on *United States v. Prater*, 766 F.3d 501 (6th Cir. 2014), which he contends "rejected" the argument advanced by the government. Reply Br. at 15; ECF No. 57. Imm's reliance on the *Prater* decision is completely misguided, however. When read closely – and when Imm's cherry-picked quotes are placed in context – *Prater* actually supports the government's position.

The statute at issue in *Prater* could be satisfied in three ways: "breaking into a building in the ordinary sense (i.e., 'generic burglary');" "breaking into a vehicle or watercraft used for lodging, business, or schooling;" and "breaking into an inclosed [sic] motor truck or an inclosed [sic] motor-truck trailer, regardless of how those objects are used." *Id.* at 513 While the first

alternative obviously constituted a "violent felony" because it mirrored generic burglary, the question for the court was whether the latter two ways of committing third-degree burglary presented a comparable level of risk to generic burglary, such that they brought the statute, as a whole, within the residual clause. *Id.* at 514. The court began by "[c]onsider[ing] the alternative form of third-degree burglary . . . that [required] entering or remaining unlawfully in a vehicle or watercraft used for lodging, business, or schooling." *Id.* Though the court acknowledged that "[v]ehicles and watercraft differ, in certain respects, from the ordinary meaning of buildings," that factor was not as critical to the court's analysis as Imm would have one believe. *Id.* Rather, the court went on to explain that, "[b]y restricting its application to places where people are likely to be found, New York's burglary statute, as applied to vehicles and watercraft, is sufficiently similar to generic burglary. The risk posed is comparable to that of generic burglary." *Id.* at 515-16. Had the statute ended there, the court's analysis would have been over; the statute would have satisfied the residual clause. But it did not. Importantly, the third alternative (the one involving entry into a motor truck or motor-truck trailer) could be satisfied even if the vehicle was not used in a manner that made it likely that people would be present. *Id.* at 515. That was critical. While the court conceded that was "*some* risk" associated with "[b]reaking into a motor truck or a motor-truck trailer," the risk was "not 'comparable' in severity or likelihood to the risk posed by generic burglary" because there was no requirement that persons would be present. *Id.* (emphasis in original). Im

To bring the point home, the court contrasted the New York statute before it with one it considered in *United States v. Coleman*, 655 F.3d 480, 483 (6th Cir. 2011). Like the New York statute, the Ohio third-degree burglary statute in *Coleman* was broader than generic burglary because it defined "occupied structure" to include "places, such as automobiles and vending

13

machines," not included in the generic definition. *Id.* at 482 (citation and quotation marks omitted). However, the Ohio third-degree burglary statute was triggered only if the structure was "maintained as a permanent or temporary dwelling," "occupied as the permanent or temporary habitation of any person, whether or not any person is actually present;" "specially adapted for the overnight accommodation of any person, whether or not any person is actually present; or if a person was present otherwise likely to present." O.R.C. § 2909.01(C)(1-(4). Because of that limitation, the court concluded that the risk posed by Ohio burglary was similar to that posed by generic burglary. *Coleman*, 655 F.3d at 483. "In each case, the risk created by a trespass with purpose to commit a criminal offense is that an innocent person – whether already inside the structure, nearby, or arriving on the scene – will notice the intruder, leading to a face-to-face confrontation that results in a physical injury." *Id.*

What Imm fails to acknowledge is that § 3502(a), like the statute at issue in *Coleman* and the portion of the statute in *Prater* that would have satisfied the residual clause, is limited to places where "people might be present." *Rolan*, 549 A.2d at 559. As the Sixth Circuit recognized, that makes it sufficiently similar to generic burglary to bring it within the residual clause. In fact, when faced with similar statutory language, several other courts of appeals have reached the exact same conclusion. In *United States v. Scoville*, 561 F.3d 1174, 1180-81 (10th Cir. 2009), the court held that two different versions of Ohio's third-degree burglary statute satisfied the residual clause because the statutes were only satisfied if a person was likely to be present in the structure or if the structure was used as a dwelling or adapted for overnight accommodation. Similarly, in *United States v. Terrell*, 593 F.3d 1084, 1091-92, *rehearing en banc denied*, 621 F.3d 1154 (9th Cir. 2010), the Ninth Circuit found that convictions under Arizona and Missouri burglary statutes satisfied the residual clause because they limited their

14

reach to structures adapted for residential use, business use, or overnight stay. Finally, in *Cantrell*, 530 F.3d at 695-96, the court determined holding that a conviction under Missouri's burglary statute was a crime of violence under the residual clause because the statute "limit[ed] the definition of 'inhabitable structure' to only those structures where people live, carry on business, assemble or spend the night." Accordingly, in view of all of this, the Court concludes that a conviction under Pennsylvania's burglary statute satisfies the residual clause.[8]

## III. Conclusion

Based on the foregoing, Imm's two burglary convictions qualify as "violent felon[ies]" under the ACCA. In addition to these two convictions, Imm concedes that his aggravated assault conviction is a "violent felony." Accordingly, the Court finds that Imm has *at least* "three previous convictions . . . for a violent felony . . . committed on occasions different from one another."[9] The 15-year mandatory minimum sentence was properly applied, and Imm's sentence does not amount to a miscarriage of justice. *Cf. United States v. Shipp*, 589 F.3d 1084, 1091 (10th Cir. 2009) (emphasis added) ("Where, as here, Mr. Shipp was sentenced *beyond the*

---

8. Imm argues that the ACCA's residual clause should be declared void for vagueness. The United States Supreme Court has already rejected this argument, however. *See James*, 550 U.S. at 202 n.6 (rejecting Justice Scalia's argument in dissent that the residual clause is void for vagueness); *Sykes*, 131 S. Ct. at 2277. So too has our own Court of Appeals. *See United States v. Blair*, 734 F.3d 218, 223 n.5 (3d Cir. 2013) (citations omitted); *United States v. Gibbs*, 656 F.3d 180, 188–89 (3d Cir. 2011). No matter the potential persuasive force of Justice Scalia's arguments in dissent in *James* and *Sykes*, they are just that – *dissenting* opinions. The Court is bound to follow the decisions of the majority of the members of the Supreme Court. Accordingly, the Court concludes, as it must, that the residual clause is not void for vagueness.

9. Again, although the sentencing judge relied upon Imm's first burglary conviction, aggravated assault conviction, and terroristic threats conviction in order to find him eligible for the ACCA's enhanced mandatory minimum, the Court need not address whether terroristic threats can still be considered a "violent felony." As recounted in the amended PSI, Imm's criminal history contained another conviction – namely, the second burglary conviction – that the sentencing judge could have relied upon in sentencing Imm to 15 years. So, even if terroristic threats is no longer a violent felony after *Descamps* and the sentencing judge erred in so finding, Imm would receive the same sentence.

*statutory maximum* for his offense of conviction, his due process rights were violated."); *United States v. Pregent*, 190 F.3d 279, 284 (4th Cir. 1999) ("Section 2255 provides relief for cases in which 'the sentence was in excess of the maximum authorized by law.'"). Accordingly, he is not entitled to be re-sentenced without the ACCA enhancement.

The Court must still determine whether a certificate of appealability should be issued. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That is, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court finds that Imm has made such a showing, as reasonable minds could differ as to continuing applicability of the ACCA to Imm's prior convictions and, in turn, whether Imm's sentence constituted a miscarriage of justice. Thus, the Court will grant a certificate of appealability on the issue of whether Imm's prior convictions for burglary and terroristic threats are still "violent felon[ies]" under the ACCA, such that Imm was properly subjected to the ACCA's 15-year mandatory minimum sentence. An appropriate order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **Nos. 2:03-cr-00063, 2:03-cr-00216** |
| | ) | **Nos. 2:14-cv-00793, 2:14-cv-00794** |
| JEFFREY A. IMM | ) | |

## ORDER

**AND NOW**, this 1st day of December 2014, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the MOTION TO CORRECT SENTENCE UNDER 28 U.S.C. § 2255 (ECF No. 43) is **DENIED**. The Clerk of Courts shall docket Civil Action Nos. 2:14-cv-00793 and 2:14-cv-00794 as closed.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc:    all counsel of record via CM/ECF